Filed 10/19/21  P. v. Giles CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MORRIS ANTHONY GILES II,<br><br>    Defendant and Appellant. | B305732<br><br>Los Angeles County<br>Super. Ct. No. BA361168 |

APPEAL from an order of the Superior Court of Los Angeles County, Larry P. Fidler, Judge. Affirmed.

Winston Kevin McKesson for Defendant and Appellant.

Rob Bonta and Matthew Rodriguez, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Paul S. Thies, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant Morris Anthony Giles II, a former probation officer, provided cocaine to a woman who subsequently stopped breathing. Instead of calling 911, defendant spent an hour trying to revive the victim himself. He put her in the shower; he shoved various items down her throat—including a toothbrush, a hairbrush, and a turkey baster; and he punctured her throat with a pair of scissors in a failed attempt to perform a tracheotomy. Although he was charged with murder, defendant pled guilty to involuntary manslaughter and was sentenced to four years in county jail. After his release, he asked the trial court to expunge his conviction. The court denied the motion, and defendant appeals, claiming the court's ruling was an abuse of discretion. We affirm.

## PROCEDURAL BACKGROUND

By criminal indictment filed July 23, 2010, defendant was charged with one count of murder (Pen. Code,[1] § 187, subd. (a); count 1), one count of involuntary manslaughter (§ 192, subd. (b); count 2), and one count of furnishing a controlled substance (Health & Saf. Code, § 11355; count 3).

On June 22, 2012,[2] under a plea agreement, defendant waived his constitutional rights and pled guilty to count 2. Defendant admitted to having furnished cocaine to Ratana Jackson, which contributed to her death. The court sentenced defendant to the upper term of four years to be served in county

---

[1] All undesignated statutory references are to the Penal Code.

[2] The record does not support defendant's claim that he was initially sentenced on or around the date of his indictment.

jail and awarded him 1,038 days of pretrial custody credit. The court dismissed counts 1 and 3. Defendant was released from jail later that year.

In November 2018, defendant moved to dismiss his conviction under section 1203.42. Defendant subsequently argued that his conviction prevented him from obtaining the employment he needed to care for his elderly mother. Following a hearing and two rounds of briefing, the court denied the motion.

Defendant filed a timely notice of appeal.

## FACTUAL BACKGROUND[3]

On August 2, 2007, defendant, then a Los Angeles County Deputy Probation Officer, provided cocaine to Jackson before engaging in sexual acts with her and a third person. During these acts, Jackson stopped breathing. Defendant tried to administer aid by placing Jackson in the shower, dragging her out, and putting—among other items—a toothbrush, hairbrush, and turkey baster down her throat. Defendant then punctured her throat with a pair of scissors in an attempt to perform a tracheotomy.

Defendant called 911 about an hour after Jackson first stopped breathing. Paramedics knocked on the front door and rang the doorbell several times before finding the door unlocked. After the paramedics announced their presence in the home, defendant called for them to come upstairs, where he met them,

---

[3] Because the grand jury transcripts are not part of the record on appeal, the facts are taken from the prosecution's opposition to defendant's motion to dismiss, defendant's supplemental motion, and the prosecution's supplemental opposition. Defendant has not argued, either below or on appeal, that these facts are inaccurate.

naked and bloody. Jackson's body was found naked and stiff in the primary upstairs bathroom. Defendant spontaneously stated, "I really fucked up."

Blood was found throughout the house, including on the bed sheets. Various dildos and sex toys were found on and under the bed, and cocaine was found on defendant's kitchen counter. A search of defendant's closet revealed an open gun safe containing one registered handgun, one unregistered shotgun, two unregistered rifles, two probation department badges, 20 tablets of Viagra without prescription information, and an unregistered shotgun lying just outside the safe. Defendant's bathroom contained an empty tequila bottle, an empty enema bottle, a pair of bloody men's shorts with defendant's identification in the pocket, and various prescription bottles. Each prescription bottle had either no patient name or a name other than defendant's.

Defendant had blood under his fingernails, in between his fingers and toes, and in the creases of his palms. He also had abrasions on his hands and blood on his boxer shorts. The coroner's report noted that Jackson suffered injuries throughout her body, including to her lips, gums, throat, tongue, left eye, head, neck, chest, and left arm. The report noted that, while the circumstances of her death were unclear, Jackson likely died from multiple traumatic injuries and probable asphyxia.

The doctor retained to provide a forensic evaluation for the defense concluded Jackson died from a cocaine overdose resulting in seizures, respiratory difficulties, and irreversible arrhythmia. He opined that the death was an accident and that no forensic medical evidence supported forced sexual activity or forced ingestion of cocaine.

While investigating Jackson's death, police spoke to witnesses who reported that defendant had sexually assaulted them. Among them were J.P., who told her school psychologist that defendant, her mother's boyfriend, had been raping her every other day for the previous two years, beginning when she was 11 years old.

Defendant was released from custody in 2012, and in 2013, he moved to Atlanta with his mother. Defendant's mother later suffered a brain injury that caused her to lose the ability to walk and care for herself. She also suffers from memory problems.

In January 2014, police were called to defendant's Atlanta home because he was violently vandalizing his girlfriend's car during an argument. Defendant yelled at responding officers, then went into the house and returned with his mother in a wheelchair. Although defendant's mother knew nothing about the incident and was wearing only a short nightgown and light jacket in 33-degree weather, defendant refused to bring her back inside.

In November 2014, defendant's 78-year-old mother took her medication without his consent. Defendant, who was intoxicated at the time, became enraged and called paramedics to report a possible overdose. When they arrived, he insisted they take his mother to the hospital to "prove a point" and "teach her a lesson." The hospital found nothing wrong with her, but when they called defendant to arrange for her discharge, he responded that "she could figure it out herself as she got herself into this situation." At defendant's insistence, hospital staff put his mother on the phone. She was heard crying out and saying, "Please don't fly away. Please don't leave me. You're all I have."

## DISCUSSION

Defendant contends the court abused its discretion by denying his motion to dismiss his manslaughter conviction. We disagree.

### 1.    Legal Principles and Standard of Review

Under section 1203.42, a defendant may be eligible for relief if he or she "was sentenced prior to the implementation of the 2011 Realignment Legislation for a crime for which he or she would otherwise have been eligible for sentencing pursuant to subdivision (h) of Section 1170 … ."[4] If the defendant meets the initial eligibility criteria, the trial court, "in its discretion and in the interests of justice," "may permit the defendant to withdraw his or her plea of guilty … and enter a plea of not guilty … ." (*Id.*, subds. (a) & (a)(1).) "[T]he court shall thereupon dismiss the accusations or information against the defendant and he or she shall thereafter be released from all penalties and disabilities" stemming from the conviction. (*Id.*, subd. (a)(1).)

"Under this language, relief is entirely discretionary." (*People v. Allen* (2019) 41 Cal.App.5th 312, 323.) Abuse of discretion is found only if the trial court has exercised its discretion "in an arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice." (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496.)

---

[4] By its terms, section 1203.42 applies only to defendants sentenced *before* Realignment took effect in 2011. Here, because defendant was sentenced in 2012, *after* Realignment took effect, it appears the statute may not apply to him. Nevertheless, because the parties do not address that issue, we do not reach it.

## 2. The court did not abuse its discretion.

First, defendant contends it is "patently absurd" for the court to characterize the facts of this case as "extremely egregious" and "absolutely reprehensible." Why? Because defendant—by stuffing a turkey baster down Jackson's throat and attempting an at-home tracheotomy with a pair of scissors—was trying to save Jackson's life. Yet the court was not bound by defendant's interpretation of the facts—and it certainly wasn't beyond the bounds of reason for the court to conclude defendant was thinking of himself, not Jackson, when, instead of immediately calling the paramedics, he stabbed her in the neck with a pair of scissors.

Second, defendant claims that "it makes no sense" that the court that granted him a "favorable" plea deal would "turn around and deny [his] motion." He does not acknowledge, however, that the court addressed that very issue. Because there was no preliminary hearing transcript or probation report in this case, the court did not know the facts when it accepted the plea. At the expungement hearing, the court explained: "I try a lot of capital cases and complex cases. So this case wouldn't have stood out to me [at the time of the plea]. But now that I know the facts, I will be honest with you: Unless the People said they had a problem going forward with the trial and they were concerned that they might not get a conviction, it's highly unlikely I would accept the same plea today. So, quite frankly, he has gotten as much as he is going to get. I just don't find that he is really entitled to any more relief … ."

Next, defendant insists that he "needs this expungement so that he can obtain sufficient employment so that he can take care of his ill mother." But the court acknowledged and was

7

sympathetic to that fact. It simply concluded that defendant's employment difficulties did not outweigh the facts of the case and his continued violence and substance abuse.

Finally, defendant claims that the court abused its discretion because it "even stated but for discretion it would have granted the petition." Certainly, the court noted that if relief under the statute were mandatory, it would follow the law. But, the court explained, because relief is discretionary, it was choosing to exercise its discretion to deny it. In other words, defendant conflates the lawful exercise of discretion with its abuse.

In sum, defendant has not established that the court abused its discretion by denying his expungement motion.

## DISPOSITION

The order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.